Will you please call the next case? There's a green you know, for your start, I just got to mention in passing. The last time I saw you was the last time we were with Judge Quinn. Remember that? Yeah. Last December. Yeah. Yeah. May I please the court Gabrielle Green with the office of the State Appellate Defender's Office on behalf of the appellant Antonio Thomas. Mr Thomas was convicted of first degree murder and sentenced to 60 years plus life. Um, now, as a part of that conviction, um, Mr or that condition was based on a bench trial in which, um, evidence was presented where, um, Mr Thomas believes were weak facts and that did not prove beyond a reasonable doubt that Mr Thomas had in fact committed the offensive murder. Um, specifically, there was no uninterested witness who could identify who the shooter was. Also, there was a height description given by two uninterested witnesses. That high description was the same, but that height description did not match that of, um, Mr Thomas. Also, the physical evidence, particularly the fingerprint evidence, did not corroborate Calvin Brown's testimony that Mr Thomas was the passenger in his vehicle and Brown was not a credible witness because the, um, this was proved by the defense that he was not a credible witness because, um, his he had suspicious activity. Um, his specific specific best suspicious activity, along with that of his colleagues when he was seen fleeing the scene of where he left his his abandoned vehicle. Now, because of these weak facts, Mr Thomas did initially argue that the state did not meet its burden of proving beyond a reasonable doubt that he had committed this murder and therefore asking this court to reverse his conviction. Now, the second argument is the argument I'd like to focus on today, and that was dealing with the sentencing. Mr Thomas did argue that the sentence was excessive. I'm sensing Mr Thomas. The judge sentenced him to 60 years plus life. I think it's worth noting that 60 years is the maximum sentence for for murder. Um, and life is also the maximum, um, add on for the gun enhancement. And Mr Thomas was given 60 years plus life, the absolute max. Uh, we do argue that it's an excessive sentence based on, um, it's not warranted based on his background. He did not have a violent background. He had to two convictions for, um, possession with intent or, um, I'm sorry, unlawful possession of a controlled substance. He also had two convictions for obstruction of justice and one conviction for unlawful use of a weapon or felony possession of a weapon. Um, being that there was no, uh, acts of violence within his background, uh, we do argue that it was excessive based on his background. Also based on the circumstances of the offense, the sentence is also excessive. Um, the offense here is essentially the offense of others. Uh, it wasn't anything that was premeditated. It wasn't anything initiated by, um, by Mr Thomas here was it was a defense of others. So, uh, the circumstances of the case also do not do not warrant such a sentence. And when you when you think of a sentence of 60 years plus like the absolute maximum, you would expect to find depraved, um, defendant. And that's just that's just not what we have here. So it would beg to question, uh, why would the court impose such a harsh sentence? I believe that the record does indicate that the judge in this case was instituting a policy of imposing life sentences or de facto life sentences on murder cases specifically when those murders involved guns here specifically before sentencing Mr Thomas to 60 years plus life. The court told Thomas, if you're mad enough to pull the trigger, you're going to be mad enough to do life in prison. Now, um, this this was his policy. It's an if then statement. If he pulls the trigger, then life in prison. And while this statement may seem ambiguous, it may not in and of itself indicate that the judge is working with any sort of policy. Um, the law does allow us to look at other cases, other sentencing hearings and look at the comments that this judge has made, um, uh, in order to, uh, to get rid of that ambiguity. And here, you know, in the opening brief, I did list several cases in which the court handed out life sentences or de facto life sentences in murder cases, particularly in gun murder cases. But people be Jordan. Um, and in that case, uh, the court, in essence, explained why he had this policy of giving out life sentences here. He stated, I'm tired of sitting through these sentencing hearings for murders for guns, shots in the streets. Then the judge went on to say, um, if you're mad enough to have a gun that's fired and the life is taken, you're going to be mad enough to spend the rest of your life in prison because that's the line that's drawn in the sand. And in that case, the defendant was in his twenties, and he gave a de facto life sentence to that defendant. So here, by when the court saying that he's drawing the line in the sand, um, the court's no longer using, um, using his discretion. He's stating that. Well, wait a minute. Let me just ask you, would it be? This is inferior, right? And they're having not on the scale of Chicago, but they're having a little gun violence issues down there. And would it be unreasonable for a trial judge to say, try to send a message of, you know, this young community, these young men, issue of somebody and kill him? I'm not, you know, this is what's gonna happen to you as a deterrent. And here's that being a reasonable position for him to take. It's unreasonable for the judge to institute a policy. I think the law is clear on that, that that the judge needs to use his or her discretion. He has to look at each case individually, the facts of the case, the defendant in that case, um, in instituting a, uh, instituting a sentence. The judge is not permitted to have a blanket policy, um, with respect to going out sentences. Well, is there? I mean, is there enough evidence here of a blanket policy? Yeah, there is the statement that the court makes. If you pull the trigger, then then you're gonna do life in prison. It wasn't, um, it wasn't the judge simply saying that you're gonna face the consequences of your actions. It was it was him stating, um, stating a policy. And I think that well, it is shown with his, um, his statement, particularly in Jordan, where he says essentially the same thing. If you take a life, then you're going to do life in prison. He says, he specifically says drawing the line in the sand. That means once you once you've gone past that line, then discretion is basically out of the window. At that point, once you've taken a life, you're below that line and a life sentence is going to be imposed. Well, okay, but what a reverse way that one could look at that from another angle and saying, I'm gonna exercise my discretion by putting you in jail for life. Say it's not discretionary because he says I'm if you murder people with a gun, I'm gonna lock you up for life. His that judge's particular way of exercising his or her discretion. If the judge had said that here, that that's not what we have in this case here. We do have the judge saying basically the same thing to at least two different two different defendants here, um, saying that if if you take a life, if you pull the trigger, then then life in prison, there's no exercise exercise of discretion here. And in fact, this court's going to hear a case later on this evening, where this judge Institute looks at life expectancy tables before, um, giving a de facto life life sentence to, uh, to another defendant. This is not the judge, um, merely, uh, say, stating empty words. This judge is instituting a policy. He's drawn a line in the sand. He said, um, you know, once once you've gone past this point and you've you've taken a life, there's gonna be a policy that I'm instituting, and it's gonna be life in prison after that. So if his goal was to maybe try to save other lives of kids on the street from being shot down by doing this, you're saying that would be an abuse of his discretion. That could certainly I mean, he could certainly have a have a goal. I mean, when when sentencing defendants, a sentencing factor can be, um, deterring others from committing the same crime. That's a that's a, um, that's an acceptable sentencing factor that a judge can consider when when handing out sentence. But a judge cannot just have a policy. The judge has to use his his or her own discretion, and this court did not do so. And it stated, um, as such in the words in Jordan, where he says, um, you know, he's sitting of sitting through these sentencing hearings for murders for gunshot shots in the streets. Um, that's that that's certainly a fine comment to make, and makes a policy based on based on that, then that's that's an incorrect, um, manner in which to go on a sentence that's not using his discretion. So the court did not use this discretion here. Um, the state would suggest that the court is merely saying, you know, these are the consequences of your action. If you kill somebody, there's going to be consequences. And, um, that that sort of summary ignores the judge's words. The judge specifically said, if you pull a trigger, then life in prison. If you take a life, then life in prison. Um, and because this, um, this sentence was excessive, not only because of the background and the specific circumstances of the offense, um, the sentence was a result of a judge was instituting, um, with respect to, uh, gun murders with respect to murders in general. And as such, Mr. Thomas asked that this court vacate his sentence and remand for a new sentencing hearing in front of a new judge. One last question. So how many people you gonna kill before you qualify for life? Well, there's automatic life if it's if it's too, but the legislature did put a, a, a range on, on murders. I mean, in a, in a judge, right? I'm certainly not arguing that 60 years plus life is not an acceptable, um, it is a permissible, um, uh, sentence. However, when even when looking at a sentence that is within the permissible range, um, if you've got something in the record that indicates that the judge considered, uh, either an improper factor or that the judge is implementing some sort of personal policy, that's, that's an, that's improper for a judge to, um, to consider when instituting it, instituting a sentence. So here, I think where you've got, uh, Mr. Thomas, he's got no violent priors. The circumstances of the offense, uh, clearly indicate something that, uh, was not premeditated. It wasn't something that Mr. Thomas, um, initiated. It was something that, um, it was, it was a defense of others. It was a call for help. And, um, that alone, these 60 years plus life is excessive on that. Well, if my friend's fighting with another fellow, and so now, and I jumped in to help my friend, now there's two of us against him. Would it, would it, in that fight, sort of walking up and shooting him? Absolutely. I'm not, I'm not at all arguing that the response was the correct response. However, um, the circumstances don't warrant a, the absolute maximum, um, sort of, uh, excuse me, mm. Bring it up with you. We've got ours right here. Sorry. Yeah. Would it be okay? I think you answer. Okay. Thank you. Thank you, Mr Green. This is Debbie. Afternoon, your honors. I'm gonna respond to the sentencing issue. I think I responded well in our brief to the reason, but I'm troubled somewhat by the reply brief and the argument today. Counsel poses this idea that the state is arguing that the defendant was sentenced for what he did and not why he did it. Absolutely. He's being sentenced for what he did and why he did it is not relevant in this case because there's no evidence amounting to an affirmative defense that would explain why he did and which would lower his culpability. That's not present in this case. He's being sentenced for what he did. This defendant has a criminal career dating back to when he was 11 years old and he committed a burglary. He's committed drug offenses, federal gun offenses, and two months after he shot and killed Curtis Johnson, he was located in Kroger parking lot with a weapon. He likes to have loaded handguns in public. On the day of this offense, Curtis Johnson and his girlfriend Tiffany and their two children, Tiffany's pregnant, they have two children other than that. They went to a video store and on the way home, pulled into the Circle K gas station where Calvin Brown, lovely individual, starts a little offensive. Curtis goes after him, pulls his hair, and a physical fight ensues. Calvin, the little coward, yells for help. The defendant got out of a Jeep, walked up to Curtis Johnson, and when he was two feet away, shot him in the chest and killed him in front of his children. And then he ran off. Now, I think the nature and circumstances of the offense and the history and weren't a sentence of 60 years imprisonment. What did Calvin the coward do after the shooting? Jumped in the car and drove away. So Calvin ran off too? Yes, he did. And Calvin's the only one that says Antonio did it. Neither one were located at the scene. Not at the scene, no. They met at the beginning. Was the gun recovered, the murder weapon? I don't recall if they identified the murder weapon or not. It was sometime before they recovered. Wasn't it really just Calvin the coward that said Antonio did it? Calvin's record similar to Antonio's? Oh yeah, Calvin is not a good guy. But there were witnesses at that gas station that said that a man wearing a black hooded sweatshirt got out of the passenger side of Calvin's car and approached the two of them and shot Curtis Johnson. What did the police investigation show about excluding Calvin the coward as the murderer? Well, everybody saw Calvin physically fist-fighting with Curtis Johnson, the victim. He didn't have a gun on him. Some people say he was the shooter? No, I don't think any witness said he was. The second part of the argument as to the sentence in this case is that there's a comparison between this case and other cases pending before this court. I don't think that's proper, but if you were to consider those cases, you will find that the defendant did not impose an add-on of life imprisonment in all those cases. Not all those defendants got the maximum of 60 and he didn't impose life. Counsel likes to argue that de facto life. Well, if the defendant was sentenced to 60 years for murder and got the minimum add-on of 25 years, that's de facto life. That's 85 years with no good time credit. So, I don't know where this argument of de facto life really helps push the defendant's argument here. And I would also point out that counsel has argued that the state misses the crux of the defendant's argument that the judge, as a policy, imposes life or de facto life on defendants convicted of murder involving guns. No, the legislature's policy imposes that. It is mandatory under circumstances in this case that a trial judge sentence a defendant to an add-on of 25 years to life. Whatever is in that range is discretionary, but he must impose the add-on. That's the legislature's policy, not the judge's policy. And as far as the judge's predisposition to impose life, as I said, he doesn't impose life in every case. He did in this case. And his statement that if you're man enough to pull the trigger, you're man enough to do life, that is a catchphrase that means nothing other than, you know, unless he's Beretta, if you can't do the time, don't do the crime. What's the difference? That is not indicative of any policy or predisposition on the part of the trial judge. The only thing the trial judge did in this case is take a look at this defendant, the nature and circumstances of his offense, his character, his criminal history, and exercised his discretion in imposing a 60-year term and a life added. Nothing more and nothing less. That's all I have unless you have any questions. I have a question on the DNA issue. Based on your brief, I'm not sure what the state's position is. You say there is no issue here. Are you conceding that the DNA should be vacated or are you saying the DNA fee should stand and there's no issue? Well, let's see. I am finding a place in the record where the judge ordered a DNA extraction or a $200 DNA analysis fee. So if the clerk collected it, do you think there's an issue? If he ordered it, it should be vacated, but I didn't find in the record, in the common law record is where the order is. Did you look at the court cost sheets to see if one was imposed? You mean the clerk's cost sheet? No. I didn't see where the judge ordered one. We can agree that if the judge didn't order it, the clerk can impose it. That's what I'm saying. Yes. Because it is in the cost sheet. The cost sheet also includes about $4,000 in sheriff's fees. Do you know where those came from? No. Was this young man extradited from somewhere? I don't know. So when you were preparing to write your brief, you didn't look at the cost sheet at all? No. I had no reason to. And whatever's on the cost sheet, whatever fines were imposed, we all know they're never going to be paid. You know, I just... And there was no issue regarding any fines. So that's how you prepared for these cost issues? I didn't. There isn't a cost issue. Is that what you're telling us, though? That's how you prepared? No. I'm saying there is no cost issue in this case. Okay. There is no issue raised that there were inappropriate fines or costs or anything else other than the DNA, which I did not find ordered. Thank you. Okay. All right. Thank you. Ms. Green, some rebuttal? Yeah. Just briefly, the cost sheet is at SR1 of the record. And as far as I know, the sheriff's fees, when I review them, do seem to be the transportation fees. I know it seems quite costly, quite high for considering he was convicted in 2011. And I think the incident occurred in 2012. It does appear high for that since the case didn't go on for very long. You do agree the clerk assessed the cost of $200,000? The court did. And the court didn't order it? Correct. But, Justice Frederick, I did want to mention something that you indicated with respect to – Weren't there witnesses that said – There was. – that the county was the shooter? Annie Sanders. She was the assistant manager in the Circle case. She said that it was the guy with the drugs. And initially – That was her testimony? That was her initial testimony. Duffy didn't read that part of the record. I can't speak to that. But, yes, that was in the testimony, and initially Tiffany Smith also testified to that. But I would like to just mention what Justice Smith indicated, that Calvin Brown was the only individual who pointed out Mr. Thomas as his passenger. And that testimony is refuted specifically by that fingerprint evidence. And I think that's important because this was not premeditated. Calvin Brown said that – Well, first of all, is there any evidence or testimony that anybody that gets in a car always leaves fingerprints? No. No. But I think it is compelling that this was not the only evidence. The fingerprint evidence was not the only evidence that did not corroborate Brown's testimony that Thomas was in the car. We also had two individuals, Samuel Hobson and Lauren Thomas, who gave the same height description of the shooter as being 5'8". And they both indicated that – And Mr. Thomas is 6'1". And specifically that height description is reliable because Lauren Thomas, who's 6 feet tall, knew that that shooter was shorter than she was. So there's a little bit of reliability based on her reference that she gave. But I would also like to just talk briefly about the sentencing issue. It was a policy. If you've got a judge who's making statements, if they're statements, and you've got a judge who's consulting life expectancy tables, this court should look into that. Had it just been 60 years plus life without any comments, that would be a permissible sentence and there wouldn't be this argument. But this court should look at those statements because a judge should not be instituting policies. But if such a sentence, 60 years plus life for an offense of others, comes with if-then statements and comes with a judge looking at life expectancy tables, I think it's important that this court look at those statements and see that there is a policy that's being instituted here. If there are no other questions, I guess – yes? I just have one. Do you folks ever meet with your counterparts that are at the trial, the public defenders of trial? On occasion. I just – cases like this, they can scratch my head as to why in the world anybody would bench a case like this. You know, it's – I think the record indicated that the – it was against trial counsel's advice. So – but I would tend to agree with you. But in closing, we do ask that this court, on the reasonable doubt issue, make it his convictions or the sentencing issue sent for resentencing. Can I ask you one more question based on the record? And I apologize. There's one record which we all have to share and sometimes fight over. There was a black sweatshirt that had DNA on it. And we know the defendant was not excluded. The victim was not excluded. But was Calvin Brown excluded as the source of the DNA on that sweatshirt? Calvin Brown was excluded. With that DNA evidence? With the DNA evidence. And I think the medical examiner testimony indicated that it was likely not Calvin Brown because he was too close. I appreciate your knowledge of the record. That is very helpful to me. Thank you. Thank you. Thank you both for your arguments here this morning. This matter will be taken under advisement. A written disposition will be issued in due course. And right now we'll be in a brief recess for a panel change before the next case.